1

**MAUNE.RAICHLE.HARTLEY.FRENCH & MUDD, LLC**
David L. Amell, Esq.   (State Bar No. 227207)
Rabiah N. Oral, Esq.   (State Bar No. 319905)
1900 Powell Street, Suite 200
Emeryville, CA 94608
Telephone: (800) 358-5922
Facsimile: (314) 241-4838
damell@mrhfmlaw.com
roral@mrhfmlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH B. HUNTER JR. and CLAIRE MEALEY-HUNTER,<br><br>         Plaintiffs,<br><br>vs.<br><br>ALLIED PACKING & SUPPLY, INC., et al.<br><br>         Defendants. | Case No.: 3:25-cv-02523-AMO<br><br>[Alameda County Superior Court Case No.: 24CV103960]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS**<br>―――――――――――――――<br>Courtroom:    10, 19th Floor<br>District Judge: Hon. Araceli Martinez-Olguin<br><br>Filed in State Court: December 19, 2024<br>Removed to NDCA: March 13, 2025<br>Trial Date:        Not yet set. |

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................... 1

II.    STATEMENT OF THE FACTS ............................................................................. 1

    A.    Plaintiffs Have Expressly Disclaimed Any Claims Against Greene Tweed that Could Possibly Support Removal..................................................................... 1

    B.    Greene Tweed's Removal is Untimely and Was Done in Bad Faith.............................. 2

    C.    Greene Tweed Privately Engaged in the Design, Manufacture, and Marketing of Commercial Asbestos Packing Products through 1985 .................................. 4

    D.    Military Specifications for Packing Do Not Require the Use of Asbestos nor Prohibit the Provision of Warnings ........................................................... 5

        1.    The Navy did not require Greene Tweed to manufacture or supply packing material with asbestos. ................................................................... 5

        2.    Federal specification required manufacturers to provide appropriate warning with their products. ....................................................................... 6

III.    LEGAL ARGUMENT ............................................................................................ 8

    A.    Plaintiffs' Disclaimer of Claims Supporting Removal Requires Remand of This Case to State Court .......................................................................... 8

    B.    Greene Tweed's Removal is Untimely ................................................ 11

    C.    Greene Tweed Fails to Demonstrate that this Court Has Jurisdiction Here .................. 11

        1.    Greene Tweed Fails to Show Direction of a Federal Officer ..................... 12

        2.    Greene Tweed Has Not and Cannot Demonstrate a Colorable Federal Defense to Plaintiffs' Claims. ....................................................... 13

            a.    The Government Contractor Immunity Defense is unavailable to Greene Tweed........................................................................ 14

            b.    The defense is not applicable to Plaintiffs' design defect claims. ........................ 16

            c.    The defense is not applicable to Plaintiffs' failure to warn claims....................... 16

        3.    The "*Yearsley* Derivative Sovereign Immunity" Defense is Unavailable to Greene Tweed........................................................................... 18

    D.    Monetary Sanctions are Warranted for Defendant's Improper Removal .................... 19

IV.    CONCLUSION..................................................................................................... 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Ackerson v. Bean Dredging, LLC*,
 589 F.3d 196 (5th Cir. 2009) ............................................................... 19

4

*Anderson v. Owens-Corning Fiberglas Corp.*,
 810 P.2d 549, 558 (Cal. 1991) .............................................................. 13

5

6

*Barker v. Lull Engineering Co.*,
 573 P.2d 443, 454 (Cal. 1978) .............................................................. 13

7

*Boyle v. United Technologies Corp.*
 487 U.S. 500 (1988) ................................................................ 14, 15, 16

8

9

*Butler v. Ingalls Shipbuilding, Inc.*,
 89 F.3d 582 (9th Cir. 1996) ................................................................. 15

10

*Cabalce v. VSE Corp.*
 922 F.Supp.2d 1113 (D. Haw. 2013) ...................................................... 19

11

12

*Dougherty v. A.O. Smith Corp.*
 No. 13-1972-SLR-SRF, 2014 WL 3542243, at *10 (D.Del. July 16, 2014) ........... 9, 11

13

*Durham v. Lockheed Martin Corp.*
 445 F.3d 1247, 1251 (9th Cir. 2006) ...................................................... 12

14

*Faulk v. Owens-Corning Fiberglas Corp.*,
 48 F.Supp.2d 653, 663 n.14 (E.D. Tex. 1999)) ........................................... 18

15

16

*Fung v. Abex Corp.*
 816 F.Supp. 569 (N.D.Cal.1992) ........................................................... 12

17

*Getz v. Boeing Co.*,
 654 F.3d 852, 865-66 (9th Cir. 2011) ..................................................... 15

18

19

*Gomez v. Campbell-Ewald Co.*,
 768 F.3d 871, 880 (9th Cir. 2014) (*affirmed*, 136 S. Ct. 663 (2016) ................. 19

20

*Hayden v. 3M Co.*,
 No. 15-2275, 2015 WL 4730741 at *4 (E.D. La. Aug. 10, 2015) ........................ 10

21

22

*Holdren v. Buffalo Pumps*,
 614 F.Supp.2d 129 (D.Mass.2009) ......................................................... 17

23

*In re Hawaii Federal Asbestos Cases*,
 960 F.3d 806 (9th Cir. 1992) ................................................ 14, 15, 16, 18

24

25

*Jowers v. Lincoln Electric Co.*
 617 F.3d 346, 352 (5th Cir. 2010) ......................................................... 17

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Keller v. A.W. Chesterton Co.*,
   No. 15-CV-893-SMY-SCW, 2015 WL 7422756 at *3 (S.D. Ill. Nov. 23, 2015)...................... 9

4

*Leite v. Crane Co.*
   749 F.3d at 1117 (9th Cir. 2014) ....................................................................................... 12

5

6

*Lindenmayer v. Allied Packing & Supply, Inc.*,
   2010 WL 234906 (N.D.Cal. Jan.14, 2010)................................................................... 17, 18

7

*Luce v. A.W. Chesterton Co.*,
   2010 WL 2991671 (N.D.Cal. July 29, 2010) .................................................................... 17

8

9

*Madden v. A.H. Voss Co.*,
   No. C 09-03786 JSW, 2009 WL 341537, at *2-3 (N.D. Cal. Oct. 21, 2009).......................... 10

10

*Martin v. Franklin Capital Corp.*
   546 U.S. 132, 141 (2005) ................................................................................................ 20

11

12

*Martincic v. A.O. Smith Corporation*,
   No. 2:20-cv-958-WSS, 2020 WL 5850317 at *3 (W.D. Penn. Oct. 1, 2020) ...................... 9, 11

13

*Matter of Crosby Marine Transportation, L.L.C., et al.*,
   537 F.Supp.3d 887, 894 (E.D. Louisiana 2021) ................................................................ 15

14

15

*Mesa v. California*
   489 U.S. 121 ................................................................................................................... 12

16

17

*Moore v. Permanente Medical Group, Inc.*,
   981 F.2d 443, 446 (9th Cir. 1992) .................................................................................... 20

18

*Oliver v. Oshkosh Truck Corp.*
   96 F.3d 992, 1003–04 (7th Cir. 1996) .............................................................................. 17

19

20

*Phillps v. Asbestos Corp.*,
   No. C 13-5655 CW, 2014 WL 794051, at *2 (N.D. Cal. Feb. 26, 2014)................................ 10

21

*Prewett v. Goulds Pumps (IPG)*,
   2009 WL 2959877 (W.D.Wash. Sept.9, 2009) ........................................................ 14, 15, 17

22

23

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025) ............................................................................................................ 9

24

*Sawyer v. Foster Wheeler LLC*
   860 F.3d 249, 256 (4th Cir. 2017) .................................................................................... 17

25

26

*Siders v. 20th Century Glove Corp. of Texas*,
   No. 2:15-CV-13278, WL17334373, at *4 (S.D.W.VA. Apr. 29, 2016) ................................. 9

27

28

iii

## TABLE OF AUTHORITIES

**Cases**

*Snell v. Bell Helicopter Textron, Inc.*,
    107 F.3d 744, 748 (9th Cir. 1997) ........................................................... 15

*Spurlin v. Air & Liquid Systems Corporation*
    568 F.Supp.3d 1050 ................................................................................. 19

*Tate v. Boeing Helicopters*
    55 F.3d 1150, 1157 (6th Cir. 1995) ........................................................ 17

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115, 1117 (9th Cir. 2004) ...................................................... 12

*Walek v. Boeing Co.*
    No. ED CV 15-0309 DOC (DTGX), 2015 WL 910150 at *4 (C.D. Cal. Mar. 9, 2016) .......... 15

*Westbrook v. Asbestos Defendants (BHC)*,
    Case No. C-01-1661-VRW, 2001 WL 902641, at *1, 3 (N.D. Cal. July 31, 2001) ............ 10

*Williams v. Beechnut Nutrition Corp.*,
    229 Cal. Rptr. 605, 608 (Cal. Ct. App. 1986) ........................................ 14

*Yearsley v. W.A. Ross Constr. Co.*
    (1940) 309 U.S. 18 ........................................................................... 14, 18

**Statutes**

28 U.S. Code § 1441 ............................................................................... 12

28 U.S. Code § 1442 ............................................................................... 12

28 U.S. Code § 1446(b)(1) ....................................................................... 11

28 U.S. Code § 1446(b)(3) ....................................................................... 11

California Code of Civil Procedure § 36(a) .............................................. 2

California Code of Civil Procedure § 36(d) .............................................. 2

**Other Authorities**

California Civil Jury Instructions (CACI) 1203, 1205, 1220, 1221 & 1222 .............. 14

**Rules**

Federal Rules of Civil Procedure 30(d)(1) ............................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

## I.     INTRODUCTION

Plaintiff Joseph B. Hunter Jr. ("Plaintiff" or "Mr. Hunter") has mesothelioma – a terminal cancer caused by asbestos exposure. He filed his case for personal injury in California state court against those defendants who he alleges are responsible for his asbestos exposure. Mr. Hunter had a lengthy career as an electrician, but his exposures that led to this removal occurred during his time working at civilian shipyards in Southern California. After filing an answer and appearing for every day of Mr. Hunter's twelve days of deposition, Defendant Greene, Tweed & Co., Inc. ("Defendant" or "Greene Tweed") removed this case under 28 U.S.C. §§ 1442(a)(1) and 1446(d) on federal officer grounds because Mr. Hunter may have used Greene Tweed's packing products – used in the course of his work at the civilian yards – aboard naval vessels.

Plaintiffs here seek the immediate remand of this case to the Alameda County Superior Court of California because (a) Plaintiffs have expressly disclaimed any claims against Greene Tweed that arise out any asbestos exposure Mr. Hunter may have sustained aboard naval vessels; (b) Greene Tweed's removal was untimely; and (c) Greene Tweed fails to meet its burden of demonstrating that it has a colorable federal-law based defense. Plaintiffs further request that this Court award monetary sanctions as to Greene Tweed's counsel.

## II.     STATEMENT OF THE FACTS

### A.  Plaintiffs Have Expressly Disclaimed Any Claims Against Greene Tweed that Could Possibly Support Removal

On March 25, 2025, Plaintiffs filed an amendment to Exhibit A of their Complaint providing that:

> Plaintiffs expressly disclaim and waive any claim against Defendant GREENE, TWEED & CO., INC. that arises out of or relates to any asbestos exposure Mr. Hunter may have sustained aboard any naval vessel.[1]

(Plaintiffs' Amendment to Complaint Regarding Complaint Exhibit A, attached as **Exhibit A** to

---

[1] Greene Tweed has filed a reply to Plaintiffs' Amendment; the reply does not oppose the amendment but provides Defendant's position that the disclaimer does not deprive this Court of jurisdiction. (Dkt. No. 138).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1   the Declaration of Rabiah N. Oral ("Oral Decl."); Dkt. No. 112).

2   **B.  Greene Tweed's Removal is Untimely and Was Done in Bad Faith**

3   Mr. Hunter has malignant mesothelioma of the pleura[2]; he was diagnosed on or about

4   September 10, 2024. (Oral Decl. at ¶ 3). Plaintiffs' complaint was filed in Alameda County –

5   California State Court – on December 19, 2024. (*Id.* at ¶ 5). Therein, Plaintiffs allege that Mr.

6   Hunter was exposed to asbestos, that this exposure was a substantial factor contributing to his

7   developing mesothelioma, and that defendants named therein are responsible for this exposure

8   and resulting damages. (*Id.* at ¶ 5). Greene Tweed was named in the initial complaint, and

9   summons was served on Greene Tweed on December 31, 2024[3]. (*Id.* at ¶ 6; Proof of Service of

10  Summons on Greene Tweed, dated December 31, 2024, attached as **Exhibit C** to the Oral Decl.).

11  Greene Tweed filed and served its Answer[4] on January 27, 2025. (Greene Tweed's Answer to

12  Plaintiffs' Complaint, attached as **Exhibit D** to the Oral Decl.).

13  Mr. Hunter's deposition commenced on February 10, 2025, and concluded with Volume

14  12 on March 10, 2025. (Oral Decl. at ¶¶ 9-10). Near the end of his deposition, on February 27,

15  2025, Plaintiffs filed a motion for preference[5] in trial setting, set to be heard on March 25, 2025.

16  (Plaintiffs' Notice of Motion for Preference Pursuant to Code Civ. Proc. §§ 36(a) and 36(d),

17  attached as **Exhibit E** to the Oral Decl.). Mr. Hunter's deposition moved slowly as he was

18  unable to proceed for many hours a day – he was only able to testify for over two hours on the

19  record one day, and there were days as low as one hour and fourteen minutes or one hour and

20

21  [2] Malignant mesothelioma is "an aggressive tumor arising from the mesothelial cells lining the pleura" with "an extremely poor prognosis", characterized by "Rapid progression of the disease, no effective therapeutic approach and resistance to chemotherapy and radiotherapy result[ing] in a median survival time of less than 12 months."

22  (Porpodis, *et al.*, "Malignant pleural mesothelioma: current and future perspectives", *Journal of Thoracic Disease*, Vol. 5, Suppl. 4 (2013), 5392-5409, attached as **Exhibit B** to the Oral Decl. at 5392.)

23  [3] Although a number of defendants were brought into the complaint as "DOE" defendants in the initial months of this case, all defendants were served with the summons and complaint as of February 19, 2025. (Oral Decl. at ¶ 6).

24  [4] Greene Tweed pleads the government contractor defense as an affirmative defense in its Answer. (Greene Tweed's Answer to Plaintiffs' Complaint, attached as **Exhibit D** to the Oral Decl. at 7:7-12).

25  [5] Plaintiffs' motion for preference was grounded in California Code of Civil Procedure, sections 36(a) and 36(d). (Plaintiffs' Notice of Motion for Preference Pursuant to Code Civ. Proc. §§ 36(a) and 36(d), attached as **Exhibit E**

26  to the Oral Decl.) These subsections provide for a preferential trial date set within 120 days where, under subsection (a) an interested party is over the age of 70 and delay in trial setting will prejudice his or her interests in the case,

27  and under subsection (d) there is clear and convincing medical documentation that a party suffers from a condition raising substantial medical doubt of survival beyond six months. (Cal. Code Civ. Proc. §§ 36(a), 36(d)).

2

28

1  seventeen minutes on the record. (Oral Decl. at ¶ 12). He further had to take eight calendar days

2  off because he felt too unwell to testify, or due to his frequent doctor's appointments and

3  treatments for his cancer. (*Ibid*). Mr. Hunter's deposition was ultimately over 17 hours on the

4  record over twelve days of testimony; the declaration of his wife, submitted in support of

5  Plaintiffs' preference motion, detailed how difficult it was for him to testify.[6] (Oral Decl. at ¶¶

6  10, 13; Declaration of Claire Mealey-Hunter, initially signed in support of Plaintiffs' Motion for

7  Preference, attached as **Exhibit F** to the Oral Decl. at ¶¶ 2-16.) Greene Tweed appeared every

8  day of Mr. Hunter's deposition. (Pertinent portions of the Deposition of Joseph B. Hunter, Jr.,

9  taken in the present action, attached as **Exhibit G** to the Oral Decl. at 7:3-8, 121:3-8, 268:20-25,

10  322:20-25, 397:15-20, 490:8-12, 598:15-20, 668:9-13, 747:3-9, 836:9-14, 916:9-13, 990:3-8).

11      Mr. Hunter worked at six private shipyards between 1964 and 1980 – the two primary

12  yards were Todd Shipyard and Bethlehem Steel Shipyard. (*Id*. at 23:1-3, 24:7-26:19). When

13  questioned about the vessels he worked on, Mr. Hunter's responses were primarily focused on

14  civilian vessels; at times, he didn't even mention naval vessels when testifying about his work at

15  these private yards. (*Id*. at 139:23-140:24, 149:6-8, 152:2-4, 154:6-8, 155:18-21, 157:1-15,

16  416:13-25, 503:11-19, 562:22-563:1, 636:1-7, 655:3-9). He worked on "many" civilian ships,

17  and "multiple" naval vessels. (*Id*. at 145:16-18, 942:3-943:2). Mr. Hunter testified generally

18  about brands of aftermarket packing that he used at the shipyards, and Palmetto – a Greene

19  Tweed trade name – was one such brand. (*Id*. at 191:15-19). Mr. Hunter was never asked directly

20  whether he used Greene Tweed's Palmetto packing aboard naval vessels. (Oral Decl. at ¶ 16).

21      Greene Tweed concedes that Plaintiffs' Complaint alleges Mr. Hunter's exposure to its

22  products at Todd Shipyard in San Pedro, California. (Greene Tweed's Notice of Removal, Dkt.

23  No. 1 at 5:13-21). It is well-known in this litigation that Todd Shipyard in San Pedro, California,

24  built and repaired both civilian and naval vessels. (Oral Decl. at ¶ 17). On March 13, 2025 – just

25  three days after the conclusion of Mr. Hunter's deposition and just one day after oppositions to

---

[6] Greene Tweed intentionally delayed removing the case until after taking advantage of the state court procedures for deposition, which allow for many more hours of cross-examination than permitted in federal court. (Fed. R. Civ. Pro. 30(d)(1)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1  Plaintiffs' motion for trial preference were due, Greene Tweed filed its notice of removal.

2  (Greene Tweed's Notice of Removal, Dkt. No. 1).

3      **C.  Greene Tweed Privately Engaged in the Design, Manufacture, and Marketing of
       Commercial Asbestos Packing Products through 1985**

4

5      Greene Tweed began manufacturing and selling its asbestos-containing "Palmetto"

6  brand products in 1891 - under the trade names/trademarks of Palmetto, Cutno, Super Cutno,

7  Pelro, Palmetto Pyramid, Supersheat - including asbestos-containing Palmetto gasket material

8  (from 1943 to at least 1977), asbestos-containing Palmetto molded packings (from the mid-

9  1940s until 1979) and asbestos-containing Palmetto braided packings (from the mid-1940s until

10  1984), not ceasing sale or distribution of all Greene Tweed asbestos products until December

11  31, 1985. (Greene Tweed's Answers to Plaintiffs' Interrogatories in *In Re: Asbestos Litigation*

12  *Feb 2020 Trial Group,* Civil Action No. 03-C-9600 Kanawha Cnty., WV, attached as **Exhibit**

13  **H** to the Oral Decl. at 7:1-18, 18:24-20:16; Deposition of Greene Tweed corporate

14  representative and Vice President George Crowther taken on October 14, 2004, attached as

15  **Exhibit I** to the Oral Decl. at 101:12-21, 102:23-103:3, 110:1-22, 176:21-177:9.)

16      Greene Tweed has routinely asserted that it did not know who the end users of its

17  products were, asserting in verified responses to interrogatories that: "Greene Tweed sold its

18  products primarily to distributors. Therefore, they are not aware of the end users of its

19  products." (Greene Tweed's Response to Standard Interrogatories in *In re: Complex Asbestos*

20  *Litigation*, Superior Court of California, Alameda Cnty., Case No. 607734-9, attached as

21  **Exhibit J** to the Oral Decl. at 21:6-22:27; Greene Tweed's Answers to Plaintiffs'

22  Interrogatories in *In Re: Asbestos Litigation Feb 2020 Trial Group,* Civil Action No. 03-C-9600

23  Kanawha Cnty., WV, attached as **Exhibit H** to the Oral Decl. at pp. 8-9.)

24      With respect to warnings, Greene Tweed claims to have placed warnings on the

25  packaging of its products beginning in 1972:

26          …warning stickers were first placed on products containing
            asbestos at the end of 1972 or early 1973. The language of the
27          warning label was taken from the asbestos regulations of the

4
28

Occupational Safety and Health Act. . . . "Caution, contains asbestos fibers. Avoid creating dust. Breathing asbestos dust may cause serious bodily harm." The warning labels that were used over the years were gummed labels, adhered to the containers, or tagged labels, wired to the reels, spools, or product itself . . . The warning labels were approximately three and one-half inches by two and one-half inches.

(Greene Tweed's Responses to Standard Interrogatories in *In Re: Asbestos Litigation,* Case No. 77c-ASB-2, New Castle Cnty., Del., attached as **Exhibit K** to the Oral Decl. at pp: 26-28).

### D.  Military Specifications for Packing Do Not Require the Use of Asbestos nor Prohibit the Provision of Warnings

As asserted in its Notice of Removal, Greene Tweed claims to have a colorable federal defense under the "government contractor" defense because (1) its asbestos packing material was manufactured in accordance with precise government specifications; and (2) it "[n]o other writing or markings – including warnings of any kind – were permitted." (*See generally* Greene Tweed's Notice of Removal, Dkt. No. 1). To address these claims, Plaintiffs present the Declaration of Captain Francis J. Burger, U.S. Navy (retired) in support of this motion.

Captain Burger's extensive training and experience in both the United State military's shipboard and material procurement procedures, as well as at civilian yards and with civilian procurement procedures, qualify him to provide expert testimony on the instant subject. (Declaration of Captain Francis J. Burger – Ret. ("Burger Decl."), attached as **Exhibit L** to the Oral Decl. at ¶¶ 1-13 and Exh. 1). Captain Burger also worked at Todd Shipyard, in Southern California – one of the shipyards where Mr. Hunter worked. (*Id.* at ¶ 12).

### 1.  The Navy did not require Greene Tweed to manufacture or supply packing material with asbestos.

During the design phase of a military ship, the U.S. Navy's design agent prepared bid packages for each piece of equipment, including valves and machinery in the engineering spaces. (Burger Decl. at ¶ 17). These bid package contained, among many other items, the purpose and intended location of the piece of equipment, the quantity of equipment, the performance requirements (specification) for the piece of equipment and the relative dimensions

5

of adjacent or connecting equipment. (*Id.*). Engineers employed by the manufacturers of products, machinery and equipment for the Navy designed this machinery and equipment to meet the bid package including the selection of the packing to be utilized. (*Id.*).

While the U.S. Navy did publish *performance* specifications for shipboard materials (specifying their form, fit, and function), modern civilian products manufacturers were not obligated by the U.S. government or otherwise required to bid on or manufacturer products for the government. (Burger Decl. at ¶¶ 17-18). If they chose to pursue that business for profit or other motives, they could choose to do so. (*Id.*). Moreover, the Navy bid packages did not tell manufacturers how to design their products. (*Id.*). While the specifications did list materials which had been approved for use by the U.S. military, those approved materials encompassed a wide a range of options which would meet the bid packages. (*Id*.). Specifically, with regard to gaskets and packing, U.S. Navy/government specifications allowed a range of materials that included both asbestos-containing and non-asbestos materials for multiple services and temperature/pressure ranges including in specifications for gaskets and packing. (Burger Decl. at ¶¶ 19 and Exhibit 6).

Regarding Greene Tweed's products specifically, the Greene Tweed packing products used by the U.S. military were the same braided packing products that Greene Tweed commercially advertised and marketed for non-U.S. Navy commercial, industrial and general civilian ship applications. (Burger Decl. at ¶¶ 21-22). There was no substantial difference in specification, use, application or performance of the Greene Tweed asbestos-containing packing materials aboard civilian ships as versus those used aboard U.S. military ships, nor was there any specialized markings on or packaging of the Greene Tweed asbestos-containing packing materials used aboard U.S. Navy ships as versus aboard civilian ships. (*Id.* at ¶ 22).

### 2. Federal specification required manufacturers to provide appropriate warning with their products.

The U.S. Navy and federal government relied heavily upon civilian product and equipment manufacturers to identify all hazards associated with private manufacturers'

products, materials and equipment. Further, hazards of asbestos exposures were not exempted from Navy warning and instruction requirements; to the contrary, U.S. Navy specifications for the packaging and marking of privately-manufactured products for Navy use required manufacturers to identify all hazards associated with their products, materials and equipment. (Burger Decl. at ¶¶ 23-36).

Specifically, shipments of products and materials supplied to the U.S. Navy during the 1940s were subject to the U.S. Navy Shipment Marking Handbook, issued in 1942, which required product warnings for use and handling be shipped with the products on their packages. (Burger Decl. at ¶ 24). In 1956, the U.S. Navy's SECNAV Instruction further evidenced its requirement that manufacturers provide warnings concerning hazardous materials of their products. (*Id.* at ¶ 25.) Further, manufacturers were instructed to look to the "Warning Labels Guide" published by the Manufacturing Chemists Association for guidance on the type of labels to be affixed. (*Id.*). The "Warnings Labels Guide" first published in 1946 and updated in 1956 by the Manufacturing Chemists Association, referenced by the Navy's Uniform Labeling Program, included specific recommended harmful dust warning language. (*Id.* at ¶¶ 26-27).

Further, government and U.S. Navy specifications specifically referenced and incorporated into manufacturers' packaging, marking and labeling requirements. (Burger Decl. ¶ 28, and Exhs. 11-14). Through updates and revisions, this standard consistently required manufacturers to include conspicuous warnings of safety hazards related to the items being shipped. (*Ibid.*). For example, the 1951 version includes the following: "When special assembly instructions and warnings are required, they shall be supplied by the shipper and shall be conspicuously indicated". (*Id.*). In short, the U.S. Navy did not prohibit manufacturers from adding warning labels to products provided to the U.S. Navy; to the contrary, manufacturers were specifically requested to do without any prohibition by the U.S. Navy. (Burger Decl. at ¶¶ 32-36). In 1957 the U.S. Navy made it clear that precautions and safety precautions outlined in its requirements were the "minimum acceptable" and began to require that capitalized WARNINGs be highlighted for procedures that might harm or kill Navy personnel. (*Id.* at ¶ 36).

In 1961, the U.S. Navy encouraged the use of commercial practices in its technical manuals. (*Id.*). Product and equipment manufacturers and other Navy providers were also required to identify and clearly label hazardous materials. (*Id.*).

Any claims by product manufacturers that the U.S. government or Navy specifications prohibited product hazards warnings markings that accord with State law/statutes and other safety regulations (e.g., OSHA) are without basis, and are in fact directly contradicted by the government specifications themselves. (Burger Decl. at ¶¶ 30-31 and Exhibits 11-16). In fact, nowhere in any of the government or military specifications (or QPLs) in the last 60-years did the U.S. government or Navy ever prohibit products manufacturers from placing any asbestos-related warnings or precaution language on any materials supplied to the U.S. military, or on or with the product packaging or technical manuals accompanying those materials. (*Id.* at ¶ 33.) This U.S. Navy acceptance of product and equipment manufacturers' commercially-available products – including product packaging – is consistent with Greene Tweed marketing of the same products and materials for commercial use as for U.S. Navy use and qualification. (*Id.*)

### III. LEGAL ARGUMENT

Plaintiffs have expressly disclaimed any and all claims for any exposure to Greene Tweed products that may have occurred onboard navy vessel, thereby eliminating those claims that Greene Tweed alleges support removal. There are no longer any claims against Greene Tweed to which the federal officer affirmative defense could apply. This disclaimer alone warrants remand of this case to state court. In the alternative, remand should be granted as Greene Tweed's notice of removal was not timely and Greene Tweed fails to demonstrate the existence of any colorable federal defense.

### A. Plaintiffs' Disclaimer of Claims Supporting Removal Requires Remand of This Case to State Court

Federal courts, including the Supreme Court, have considered whether a plaintiff may disclaim certain claims following the removal of a case in order to have the case subsequently remanded to state court. It has repeatedly been found acceptable for a plaintiff to do so. Most

8

recently – and most notably, the Supreme Court considered this issue in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). There, the Supreme Court held:

> When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says. If (as here) the plaintiff eliminates the federal law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves. With the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state clams.

(*Royal Canin*, *supra*, 604 U.S. at 48-50.) While the case in *Royal Canin*, *supra*, did not involve federal officer removal, it explicitly considered the disclaimer of the "claims that enabled removal" post-removal, and found it an appropriate means to obtain remand to state court. (*Ibid*.)

This same issue has been repeatedly considered by federal district courts as it pertains to federal officer jurisdiction, and there is generally uniformity in ruling. "Federal district courts addressing disclaiming provisions in similar actions have 'recognize[d] a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the grounds for removal under Section 1442(a)(1)." (*Siders v. 20th Century Glove Corp. of Texas*, No. 2:15-CV-13278, WL17334373, at *4 (S.D.W.VA. Apr. 29, 2016) [quoting *Dougherty v. A.O. Smith Corp.*, No. 13-1972-SLR-SRF, 2014 WL 3542243, at *10 (D.Del. July 16, 2014)). "[F]ederal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." (*Dougherty*, *supra*, 2014 WL 3542243 at *10). It is the 'dominant view of federal district courts around the country" that "clear and unambiguous disclaimers intended to prevent removal" are effective. (*Martincic v. A.O. Smith Corporation*, No. 2:20-cv-958-WSS, 2020 WL 5850317 at *3 (W.D. Penn. Oct. 1, 2020)).

There are numerous examples from federal district courts, including district courts in the Northern District of California, granting remand of asbestos cases where the plaintiffs explicitly disclaimed the liability that supported the federal officer removal. (*Keller v. A.W. Chesterton Co.*, No. 15-CV-893-SMY-SCW, 2015 WL 7422756 at *3 (S.D. Ill. Nov. 23, 2015) [remanding case involving allegations of exposure to asbestos where, "[i]n the complaint and the notice of

9

1  disclaimer, [the plaintiff] has made clear statements that his claims do not include any work

2  performed while in the military or on military machinery"]; *Hayden v. 3M Co*., No. 15-2275,

3  2015 WL 4730741 at *4 (E.D. La. Aug. 10, 2015) [finding remand warranted in an asbestos case

4  where the plaintiff's "disclaimer eliminates any cause of action related to exposure while [the

5  plaintiff] was in the Navy and the only valid grounds for removal relate to that specific time

6  period"]; *Phillps v. Asbestos Corp*., No. C 13-5655 CW, 2014 WL 794051, at *2 (N.D. Cal. Feb.

7  26, 2014) [remanding asbestos case where the plaintiff "expressly disclaimed and waived any

8  claim arising out of or related to any asbestos exposure aboard federal jobsites and navy

9  vessels"]; *Madden v. A.H. Voss Co.*, No. C 09-03786 JSW, 2009 WL 341537, at *2-3 (N.D. Cal.

10  Oct. 21, 2009) [finding that a disclaimer defeated removal jurisdiction where the disclaimer

11  stated that "[p]laintiff's claims against [a specific defendant] exclude plaintiff's asbestos

12  exposure at military and federal government jobsites and aboard U.S. navy vessels"]; *Westbrook*

13  *v. Asbestos Defendants (BHC)*, Case No. C-01-1661-VRW, 2001 WL 902641, at *1, 3 (N.D.

14  Cal. July 31, 2001) ["The court sees no reason not to hold plaintiffs in this case to their waiver of

15  claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies

16  remand."])

17       In 2009, in the *Madden v. A.H. Voss Co*., *supra*, matter in the United States District Court

18  for the Northern District of Northern California, the plaintiff disclaimed naval liability as to only

19  one defendant – Leslie Controls, Inc., and retained the right to pursue liability related to naval

20  exposures as to the remaining 59 defendants. (*Madden*, *supra*, 2009 WL 341537 at *1-3; Oral

21  Decl. at ¶ 23). There, the district court did not find the limited nature of the naval exposure

22  disclaimer prohibitive of the plaintiff's request for remand, and granted the remand on this

23  record.  Plaintiffs are aware of no authority that would require the disclaimer of naval exposures

24  as to all defendants – including those numerous defendants that did not seek removal of this case

25  and thereby consented to state court jurisdiction, in order for this case to be remanded.

26       In 2014, the district court in *Dougherty*, *supra*, noted that "the parties have not identified,

27  nor is the court aware of, any case in which a federal court has rejected on the merits an express

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1  disclaimer of claims relating to asbestos exposure on federal jobsites and military

2  vessels/aircraft." (*Dougherty*, *supra*, 2014 WL 3542243 at *15). Plaintiffs here anticipate that, to

3  the extent defendants are able to cite any such cases, these cases will relate to instances where

4  plaintiffs have attempted "artful (i.e., opaque and ambiguous) pleading for circumventing federal

5  officer jurisdiction" instead of the clear, unambiguous disclaimer Plaintiffs have given here.

6  (*Martincic*, *supra*, 2020 WL 5850317 at *3). The dominant view of federal district courts, now

7  confirmed by the Supreme Court, provides that Plaintiffs' express disclaimer of the liability upon

8  which federal officer removal was based is sufficient for remand.

9  **B.  Greene Tweed's Removal is Untimely**

10  A removing defendant must file its notice of removal "within 30 after the receipt by the

11  defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such

12  action or proceeding is based[.]" (28 U.S. Code § 1446(b)(1)).  Service of summons and the

13  complaint was served on Greene Tweed on December 31, 2024; its removal notice – filed March

14  13, 205 – is therefore untimely. In its removal notice, Greene Tweed appears to argue that its

15  removal is timely pursuant to subsection (b)(3) of section 1446, which requires that the removal

16  notice be filed "within thirty days after receipt by the defendant, through service or otherwise, of

17  a copy of an amended pleading, motion, order, or other paper from which it may first be

18  ascertained that the case is one which is or has become removable." (28 U.S. Code § 1446(b)(3)).

19  However, Defendant concedes in its removal that Plaintiffs' initial complaint alleges exposure to

20  Greene Tweed products at Todd Shipyard – a shipyard known to service both naval and civilian

21  vessels. Defendant cannot claim, as it attempts to, that it was unaware of the potential use of

22  Greene Tweed packing on naval vessels until day two of Mr. Hunter's deposition.

23  **C.  Greene Tweed Fails to Demonstrate that this Court Has Jurisdiction Here**

24  Defendant removed this case pursuant to the federal officer removal statute of 28 U.S.C.

25  § 1442(a)(1) which authorizes removal of a civil action brought against any person "acting

26  under" an officer of the United States "for or relating to any act under color of such officer." As

27  the party who has removed this case to federal court, Defendant bears the burden of

28  ———————————————————————————————————————

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND
OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1    demonstrating that federal jurisdiction exists. (*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117

2    (9th Cir. 2004).) This is true even under the broader removal rights afforded defendants under

3    the federal officer removal statute.

> We recognize that defendants enjoy much broader removal rights
> under the federal officer removal statute than they do under the
> general removal statute, 28 U.S.C. § 1441. [citing to *Durham v.
> Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).] We
> nonetheless conclude that applying the Rule 12(b)(1) framework
> [which places the burden of proving by a preponderance of the
> evidence the existence of federal jurisdiction on the party seeking to
> invoke the federal court's jurisdiction] will not unduly burden the
> unique rights § 1442 affords removing defendants.

9    (*Leite v. Crane Co.,* 749 F.3d 1117, 1122 (9th Cir. 2014).)

10       In order to show that its removal of this case was proper such that this case should not be

11   remanded, Defendant must, by a preponderance of the evidence, "(1) demonstrate that it acted

12   under the direction of a federal officer, (2) raise a colorable federal defense, and (3) demonstrate

13   a causal nexus between Plaintiffs' claims and the acts it performed under color of federal office."

14   (*Leite, supra,* 749 F.3d at 1122; *Mesa v. California*, 489 U.S. 121, 133–34 (1989); *Fung v. Abex

15   Corp.*, 816 F.Supp. 569, 571–72 (N.D.Cal.1992).) Defendant cannot rely on mere allegations; it

16   must support its allegations with competent proof. (*Id.*)

### 1. Greene Tweed Fails to Show Direction of a Federal Officer

18       The lack of a colorable basis to remove under the federal officer statute is evident from

19   the very face of Greene Tweed's notice of removal. Greene Tweed offers no evidence

20   demonstrating its contracts or transactions with the Navy to supply packing or gaskets for use on

21   any of the naval ships potentially at issue in this case such that there is any evidence that any act

22   by Greene Tweed was done pursuant to a federal officer's direction. In fact, Greene Tweed

23   admits in prior cases that it sold its products to distributers and was unaware of the identity of

24   end users of its products, such as the navy. Even crediting Greene Tweed's assertion that the

25   Navy had detailed specifications for packing and gaskets, and that Greene Tweed's products met

26   those specifications, Greene Tweed cannot credibly claim that it was acting at the direction of a

27   federal officer when it manufactured and sold asbestos-containing packing material.

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1    In support of its removal, Defendant submits only unauthenticated military specifications,

2    without any accompanying declaration establishing the veracity of the purported specifications

3    or establishing their admissibility. The specifications cannot alone establish that Greene Tweed's

4    manufacture and sale of its packing was done at the direction of a federal officer. Defendant has

5    failed to submit any such evidence of those contracts allegedly applicable to the Greene Tweed

6    products at issue in this case. Nor has Greene Tweed submitted evidence that it was even aware

7    of those federal specifications or took them into consideration when manufacturing and selling

8    its products. The mere assertion – without admissible evidence – that specifications existed and

9    that Greene Tweed's packing materials would have had to conform to those specifications does

10   not demonstrate that Greene Tweed acted under the direction of a federal officer such that it has

11   a colorable federal defense to Plaintiffs' claims. Further, Greene Tweed has offered no evidence

12   to suggest that any of its actions were done under the direction of the federal government

13   generally, or any agent specifically, and therefore is not entitled to removal under the federal

14   officer removal statute.

15   **2.    Greene Tweed Has Not and Cannot Demonstrate a Colorable Federal**
              **Defense to Plaintiffs' Claims.**

16

17       Under California law, a manufacturer's duties consist of (1) manufacturing a product

18   that performs as safely as an ordinary consumer would expect when used in a reasonably

19   foreseeable way (*Barker v. Lull Engineering Co.*, 573 P.2d 443, 454 (Cal. 1978)); (2) supplying

20   products with sufficient instructions and warnings to apprise the products' users of potential

21   risks that were known or knowable to the manufacturer by the scientific knowledge available at

22   the time of manufacture, distribution, or sale or instructions (*Anderson v. Owens-Corning*

23   *Fiberglas Corp.*, 810 P.2d 549, 558 (Cal. 1991)); (3) supplying products with warnings of

24   particular risks that a reasonably prudent manufacturer would have known and warned about

25   (*id.*); and (4) designing, manufacturing, and supplying products with reasonable care so as to

26   avoid exposing others to a foreseeable risk of harm (*Williams v. Beechnut Nutrition Corp.*, 229

27

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND
OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

Cal. Rptr. 605, 608 (Cal. Ct. App. 1986); *accord*, CA Civil Jury Instructions (CACI) 1203, 1205, 1220, 1221 & 1222).

Greene Tweed removed this case claiming federal officer jurisdiction which requires a showing of an applicable colorable federal defense to Plaintiffs' state court claims. Greene Tweed's claimed federal-law based defenses are Government Contractor Immunity and Derivative Sovereign Immunity under *Yearsley v. W.A. Ross Constr. Co.* (1940) 309 U.S. 18. Greene Tweed has not, and cannot, show that it can avail itself of either of these defenses.

### a.  The Government Contractor Immunity Defense is unavailable to Greene Tweed.

To successfully assert a government contractor defense, Greene Tweed must show "(1) the United States approved reasonably precise specification; (2) the [product] [Defendant supplied] conformed to those specification; and (3) [Defendant] warned the United States about the dangers in the use of the [product] that were known to the [Defendant] but not to the United States. (*Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).) The central policy behind the government contractor defense is preemption. (*Id.* at 504-508.) For this defense to apply, there must be a conflict between federal policy or interest and the operation of state law. (*Id.* at 507.)

> [S]tripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.' *Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion.

(*In re Hawaii Federal Asbestos Cases*, 960 F.3d 806, 813 (9th Cir. 1992).) The defense is only available where the defective design feature in question was determined or considered by a government officer, and not merely by the contractor itself. (*Id.* at 487; *Prewett v. Gould Pumps (IPG)*, 2009 WL 2959877 at *3 ["where a private company violates state law at its own discretion rather than at the government's discretion and in accordance with federal duties, it cannot be said that there is a sufficient federal interest to justify a federal forum even using the

1    broadest of interpretations"].) In order to avail itself of the government contractor defense, a

2    defendant must show that the government had sufficient involvement "in the design of the

3    defective feature or defective warnings so that it can be said that the contractor was acting 'under

4    the color' of his duties as an agent of a federal officer." (*Prewett*, *supra,* 2009 WL 2959877 at

5    *3.) Mere government approval or compliance with specifications is not enough to give rise to

6    the defense. (*Getz v. Boeing Co.*, 654 F.3d 852, 865-66 (9th Cir. 2011).) Nor is simply supplying

7    products to the Navy. (*see Boyle*, *supra*, 487 U.S. at 509; *In re:Hawaii*, *supra,* 960 F.3d at 811.)

8          In order to meet the first element of the defense, the government's approval of a particular

9    specification must be more than a cursory "rubber stamp" of the design. (*Snell v. Bell Helicopter*

10   *Textron, Inc*., 107 F.3d 744, 748 (9th Cir. 1997).) Rather, approval must result from a

11   "continuous exchange" and "back and forth dialogue" between the contractor and the

12   government. (*Butler v. Ingalls Shipbuilding, Inc*., 89 F.3d 582, 585 (9th Cir. 1996).) Where there

13   is a "lack of precision" in a specification that created discretion regarding compliance, it fails to

14   demonstrate the necessary influence required to demonstrate this element. (*Matter of Crosby*

15   *Marine Transportation, L.L.C., et al*., 537 F.Supp.3d 887, 894 (E.D. Louisiana 2021).) Likewise,

16   general assertions by a defendant that all materials and/or equipment were subject to government

17   specifications are not sufficient to satisfy the first *Boyle* prong. (*Walek v. Boeing Co*., No. ED

18   CV 15-0309 DOC (DTGX), 2015 WL 910150 at *4 (C.D. Cal. Mar. 9, 2016) [holding that

19   assertion that "all materials used in the construction of aircraft" were dictated by government

20   specification and subject to review by the Armed Forces were "too vague and conclusory to

21   amount to a showing of reasonably precise specifications"]; *Prewett v. Goulds Pumps (IPG)*, No.

22   C09-0838 RSM, 2009 WL 2959877, at *6 (W.D. Wash. Sept. 9, 2009) [holding that assertions

23   that the Navy had "complete control over every aspect of every piece of equipment" and that

24   "[m]ilitary specifications governed every significant characteristic of the equipment used on U.S.

25   Navy ships" were "too vague to amount to a showing of reasonably precise specification"].)

26   Only where a defendant shows that the government engages in a thorough review of the

27

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND
OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]

1   allegedly defective design and takes an active role in testing and implementing it is *Boyle*'s first

2   element met. (*Butler supra,* 89 F.3d at 585.)

3               **b.  The defense is not applicable to Plaintiffs' design defect claims.**

4               Stock or standard products designed, manufactured, and sold for commercial use like

5   Greene Tweed's gaskets and packing that also happened to be bought by the federal government

6   for consistent use are not considered "military equipment", and under *Boyle* itself, the U.S.

7   military's use of such stock commercial products does not give the manufacturer a right to

8   assert the government contractor immunity defense. (*Boyle*, *supra*, 487 U.S. at 509-512.) The

9   Ninth Circuit reaffirmed this principle with regard to asbestos-containing products in *In re*

10  *Hawaii, supra,* 960 F.2d 806, holding that "[w]here the goods ordered by the military are those

11  readily available, in substantially similar form, to commercial users, the military contractor

12  defense does not apply." (*Id.* at 811.) As the Ninth Circuit explained, there is no government

13  contractor defense for products "readily available on the commercial market. The fact that the

14  military may order such products does not make them 'military equipment.'" (*Id).* There, the

15  Ninth Circuit held that asbestos-containing insulation procured by the government pursuant to

16  contract "does not represent military equipment entitling its manufacturers to the protections of

17  the military contractor defense [where the evidence shows] that the insulation sold by

18  [defendants] to the Navy was the very same insulation which those companies marketed to

19  commercial buyers." An analogous situation exists here where Greene Tweed marketed

20  identical packing– also non-distinct and fungible products like the insulation products at issue in

21  *In re: Hawaii* – to private shipyards for use on both naval and civilian vessels. Further, by

22  Greene Tweed's own admission, it sold these products to distributors without knowing which

23  end users its packing or gaskets would be supplied to.

24              **c.  The defense is not applicable to Plaintiffs' failure to warn claims.**

25              Nor can Greene Tweed raise a colorable government contractor defense with regard to

26  Plaintiffs' failure to warn claims. Typically in failure to warn claims a defendant must prove that

27  "(1) the government exercised its discretion and approved certain warnings; (2) the contractor

                                            16
28

1    provided the warnings required by the government; [and] (3) the contractor warned the

2    government about dangers in the equipment's use that were known to the contractor but not the

3    government.." (*Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 256 (4th Cir. 2017), citing *Oliver*

4    *v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003–04 (7th Cir. 1996); *see also*, *e.g.*, *Jowers v. Lincoln*

5    *Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157

6    (6th Cir. 1995).) Greene Tweed presents a purported military specification providing

7    government exercised some control over writings on packaging, but provides no evidentiary

8    support for its claims that Greene Tweed could not include asbestos warnings on its packaging.

9    Captain Burger declares that the Navy did not prohibit manufacturers from adding warning

10    labels; to the contrary, manufacturers were specifically requested to do without any prohibition

11    by the U.S. Navy. (Burger Decl., ¶¶ 32-36.) Any claim to the contrary is without basis and is in

12    fact directly-contradicted by the government specifications themselves. (Burger Decl. at ¶ 30

13    and Exhibits 11-15 thereto.)

14        Furthermore, Greene Tweed's claim that it would not be permitted or to provide

15    warnings on its packaging without first obtaining permission from the U.S. Navy does not

16    provide a basis for a government contractor defense. District courts, including those in this

17    circuit have found that where a contractor does not offer any evidence that it proposed a

18    warning to the government, the contractor "'cannot rely on a hypothetical assertion that such an

19    effort would have been futile.'" (*Luce v. A.W. Chesterton Co.*, 2010 WL 2991671, at *2

20    (N.D.Cal. July 29, 2010), citing *Lindenmayer v. Allied Packing & Supply, Inc.*, 2010 WL

21    234906, at *6 (N.D.Cal. Jan.14, 2010) [granting motion to remand]; *Holdren v. Buffalo Pumps*,

22    614 F.Supp.2d 129, 144 (D.Mass.2009) [remanding action; holding government contractor

23    defense "does not shield defendants where the government might have exercised its discretion

24    and final authority but did not"]; *Prewett v. Goulds Pumps (IPG)*, 2009 WL 2959877, at *7

25    (W.D.Wash. Sept.9, 2009) [remanding action; holding where defendant "provided no evidence

26    that it ever attempted to warn, or that the Navy prohibited warnings," and relied solely on

27    "hypothetical" theory that Navy "would have not allowed" defendant to place a warning on

                                                        17
28

product if defendant had proposed a warning, defendant's "government contractor defense [was] not 'colorable'".) "The federal government cannot have exercised its discretion to preclude [the contractor] from issuing asbestos warnings if the provision of asbestos warnings was never contemplated or proposed in the first place." (See *Lindenmayer*, *supra*, 2010 WL 234906, at *6.) Indeed, the government contractor defense has been found to apply only where the Government made a "discretionary, safety-related military procurement decision." (*In re Hawaii*, *supra*, 960 F.2d at 813 [holding defendants failed to establish government contractor defense where defendants did not show Navy "require[d] [defendants] to do anything with respect to the placement of warnings on their products"].)

Finally, Greene Tweed produced no evidence regarding the Navy's knowledge of asbestos hazards; there is no evidence that the government had superior knowledge – or any knowledge for that matter – regarding the hazards of Greene Tweed's commercially-designed packing products that the Navy happened to use. Nor has Greene Tweed here produced any admissible evidence that it actually informed the government of any such asbestos hazards, or that the government would not have allowed it to provide asbestos related safety warnings had Greene Tweed proposed them. "Defendants can bury this Court in federal government regulations controlling their actions. But if there is no causal nexus between Defendants' actions in response to this control and the plaintiff's claims, then the government did not "make them do it" since the "it" was never under government control. (*Faulk v. Owens-Corning Fiberglas Corp.*, 48 F.Supp.2d 653, 663 n.14 (E.D. Tex. 1999)). t 663, n. 14.) Greene Tweed has not and cannot demonstrate a colorable government contractor defense; remand is proper.

### 3. The "*Yearsley* Derivative Sovereign Immunity" Defense is Unavailable to Greene Tweed.

Greene Tweed attempts to invoke the so-called "derivative sovereign immunity" defense under *Yearsley v. W.A. Ross Constr. Co.* (1940) 309 U.S. 18. However, *Yearsley* involved a government contractor undertaking dredging work under the direct authority conferred by Congress. (*Id*. at 22.) Subsequent matters invoking the *Yearsley* defense have also been limited

18

to dredging companies doing federally-contracted dredging work. (*See, e.g., Ackerson v. Bean Dredging, LLC*, 589 F.3d 196 (5th Cir. 2009).) In reviewing these *Yearsley* federal defense claims, the *Ackerson* court expressly distinguished *Yearsley*'s "public works contractor liability" from "the contractor defense in the context of military-equipment manufacturers" as developed in *Boyle* "and its progeny." (589 F.3d at 205.) The Ninth Circuit agreed and limits the "use of the [*Yearsley*] defense, and only in the context of property damage resulting from public works projects." (*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 880 (9th Cir. 2014) (*affirmed*, 577 U.S. 153 (2016).)

Even if *Yearsley's* derivative sovereign immunity defense were considered outside of the public works context, the defense still fails here. The *Yearsley* defense, like *Boyle's* government contractor defense, will only apply where the complained of acts were done at the direction of the sovereign – a defendant does not obtain the sovereign's blanket immunity merely by contracting with the government. (*Gomez v. Campbell-Ewald, supra,* 577 U.S. at 166.) "[D]erivative sovereign immunity is not available to contractors who act negligently in performing their obligations under the contract." (*Cabalce v. VSE Corp.*, 922 F.Supp.2d 1113, 1126-1127 (D. Haw. 2013).) Where a defendant supplies asbestos-containing products for military use without providing warnings, and there is no evidence that the government expressly prohibited asbestos-related health warnings, *Yearsley* immunity will not apply. (*Spurlin v. Air & Liquid Systems Corporation*, 568 F.Supp.3d 1050, 1054-1056.) "Affording Defendants immunity under these circumstances would therefore seem to unfairly reward Defendants for their lack of due diligence in identifying and including warnings that the Navy relied on them to provide. Construing *Yearsley* in this way would appear to produce absurd results." (*Id.* at 1056.)

### D.  Monetary Sanctions are Warranted for Defendant's Improper Removal

The removal of this case to federal court calls for payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal, pursuant to 28 U.S.C. §1447 (c). In exercising its discretion to award costs and attorney's fees, the Court should consider whether removal was improper, looking both at the nature of the removal and of the remand.

19

(*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992).) Attorney's fees may be awarded where the removing party "lacked an objectively reasonable basis for seeking removal. (*Martin v. Franklin Capital Corp.* 546 U.S. 132, 141 (2005).) Attorney's fees may be awarded even in the absence of a finding that defendant acted in bad faith. (*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446-448 (9th Cir. 1992).)

Defendant's removal of this case to federal court was done in bad faith in an unconscionable effort to deprive a dying man of his day in court. That Greene Tweed removed this case in bad faith is evident from both the timing of the removal – untimely removing the matter after deposing Mr. Hunter for twelve days and just days before his motion for trial preference was set to be heard – as well as the face of the removal notice which shows no basis for a colorable federal defense justifying removal. Greene Tweed's baseless, defective removal is a transparent delay tactic whose sole purpose is to stall this case and prevent Mr. Hunter from having his case tried on its merits during his lifetime. This conduct should not be tolerated or condoned.

Plaintiffs therefore request that this Court order Defendant, the law firm of Manning Gross Massenburg LLP and Christopher Massenburg Esq., jointly and severally, to pay attorney's fees in the amount of $5,400.00. (Oral Decl. at ¶ 24).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court lacks jurisdiction, that defendant improvidently removed this case to federal court, and that this case should be remanded to the Superior Court of California, Alameda County, for all further proceedings.

DATED: April 4, 2025                     Maune Raichle Hartley French & Mudd LLC

By: _____
Rabiah N. Oral
Attorney for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND OF ACTION AND FOR AWARD OF COSTS [Case No. 3:25-cv-02523-AMO]